### CHILES v. MANN & MANN

5-3791                  400 S. W. 2d 667

Opinion delivered March 28, 1966

*N. M. Norton,* for appellant.

*Mitchell D. Moore,* for appellee.

ED. F. MCFADDIN, Justice. Appellee sued appellant on a promissory note. The answer was a general denial.[1] The original note was introduced in evidence and appellant admitted his signature, but sought to show that he signed as president of a corporation. The Trial Court refused to allow the appellant to present such evidence under the general denial and instructed a verdict for the

[1] The defendant's answer was: "The defendant, E. B. Chiles, Jr., for answer to the complaint of the plaintiff, Mann & Mann, Inc., denies each and every allegation thereof."

appellee. From judgment on the verdict, appellant prosecutes this appeal, and urges two points:

"I.   The Trial Court erred in holding appellant to be personally liable on this note.

"II.  If an amendment to the answer was necessary to permit the introduction of the evidence offered by appellant and rejected by the Trial Court, it was error not to permit the amendment."

I.

The original note sued on was introduced in evidence, and the germane portion reads:

"Osceola, Ark. February 22, 1964

"December 15th, 1964, after date, I promise to pay to the order of Mann & Mann, Inc., Osceola, Arkansas Sixty-Five Hundred Forty-Seven & 62/100 Dollars with interest thereon at the rate of 6 per cent from Date. Value Received, Negotiable at Osceola, Arkansas

.   .   .   .   .   .   .

"Chiles Planting Company, By: E. B. Chiles, Jr."

Appellee offered evidence that the note was for value received, was signed by the appellant, was past due, and had not been paid; and then appellee rested. Appellant admitted that he signed his name, "E. B. Chiles, Jr.", on the note, but sought to show that Chiles Planting Company was the name of a corporation of which he was president and majority stockholder; and that he signed the note in such capacity. The Trial Court held that since a general denial was the only pleading filed by the defendant, he could not offer testimony as to the corporation and as to his intentions in signing the note.

There are several reasons why the Court was cor-

rect in this ruling. The first relates to the rules of pleading: *i.e.,* under a general denial testimony of confession and avoidance cannot be heard such as here: the defendant confesses his act of signing the note but seeks to avoid the effect by claiming he signed as an officer of a corporation. Some of our cases showing the limited evidence that may be offered under a general denial are: *Grier* v. *Yutterman,* 102 Ark. 433, 145 S. W. 194; and *Shirk* v. *Williamson,* 50 Ark. 562, 9 S. W. 562. Our cases are in accord with the general rules as regards pleadings. In 41 Am. Jur. 396, "Pleadings" § 149, the text reads: "Like the general issue, the general denial operates as a denial of every material allegation of the complaint as fully as if it had been specifically and separately denied. . . . . It covers defenses which go to destroy the plaintiff's cause of action, *but not those which are grounded on new matter or matters in avoidance or other defense that must be specially pleaded.*" (Emphasis supplied.) And in § 155 of the same text the general holdings are summarized: "Since the plaintiff must apprise the defendant in the beginning as to what he relies upon for a recovery, it is only right that the defendant should be required also to inform the plaintiff of any special or affirmative defenses he expects to make by pleading the facts constituting such defenses. . . . ."

An enlightening case on both of the points in this appeal is that of *Bluff City Lbr. Co.* v. *Hilson,* 85 Ark. 39, 107 S. W. 161. Hilson sued Bluff City Lumber Company for the claimed balance due on a purchase contract which was for "all the lumber of said firm, mill run . . . . at the price of $10.50 per thousand feet." The defendant denied any such contract. After the plaintiff had concluded his evidence, the defendant offered the witness Ritchie to testify as to the grades of the lumber shipped. The Trial Court refused to allow such evidence as being outside the issue tendered by the defendant's answer. In affirming the ruling of the Trial Court on this point, we said:

"Error of the court is also assigned in its refusal

to permit witness Ritchie to testify concerning the grades of the lumber shipped. Under the issues presented by the pleadings, it was not proper to admit evidence on this subject. The defendant's answer tendered no issue as to the grade, quality or quantity of the lumber alleged to have been sold and delivered. The answer denied that defendant had purchased any lumber from plaintiff, and alleged that the lumber had been shipped without authority, and was accepted by defendant only on written agreement that it should sell the lumber for the best price it could obtain and account to J. & H. Hilson for the proceeds. The defendant failed to sustain that defense, but attempted to introduce proof tending to sustain a wholly different one, not raised by the pleadings. The court was correct in excluding it.''

A second reason showing the correctness of the ruling of the Trial Court is found in our own holdings. In *First National Bank* v. *J. H. Snyder Manufacturing Company*, 175 Ark. 1134, 1 S. W. 2d 817, the note was signed, ''J. H. Snyder Mfg. Co., W. H. Snyder.'' When sued on the note W. H. Snyder sought to show: that J. H. Snyder Manufacturing Company was a corporation; that W. H. Snyder was its president and manager; that W. H. Snyder signed the note as an officer of the corporation and did not intend to become personally liable. This Court, in an Opinion by Chief Justice Hart, held that such testimony by W. H. Snyder was not to be heard as it was an attempt to vary by parol evidence the terms of the written note. He said:

''The signatures are 'J. H. Snyder Mfg. Co., W. H. Snyder.' The signatures do not indicate whether J. H. Snyder Mfg. Co. was a trade name, partnership, or corporation. There is no designation by W. H. Snyder that he signed as an officer or agent by any word. We are of the opinion that there was no ambiguity in the note, and that the circuit court erred in admitting parol evidence to show that W. H. Snyder signed the note as attesting officer

of J. H. Snyder Manufacturing Company, a corporation, of which he was president, and that there was an understanding between him and the bank that the corporation alone was to be liable on the note."

Here, the appellant, E. B. Chiles, Jr., did not show on the note that he was signing in any capacity as officer of anything. The only signature—"Chiles Planting Company by E. B. Chiles, Jr."—meant that Chiles Planting Company was the trade name of E. B. Chiles, Jr., and he could not offer parol testimony to vary that meaning.[2]

Appellant insists that, even if the Arkansas cases are as above stated, nevertheless such cases have been changed by the adoption of the Uniform Commercial Code, which is Act No. 185 of 1961; and appellant particularly refers us to Ark. Stat. Ann. § 85-3-403 (Add. 1961), the germane portion of which reads:

"(2) An authorized representative who signs his own name to an instrument: (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity; (b) except as otherwise established between the immediate parties is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, . . . ."

Particularly, the appellant insists on this language: "An authorized representative who signs his own name to an instrument: * * * (b) *except as otherwise established between the immediate parties* is personally obligated if the instrument names the person represented but does not show that the representative signed in a

---

[2]In 82 A.L.R. 2d 424, there is an annotation: "Personal liability of one who signs or endorses without qualification commercial paper of a corporation."

representative capacity, \* \* \*'' (Emphasis supplied.) Appellant insists that under the expression, *"except as otherwise established between the immediate parties,"* he had the right to show that the plaintiff knew that he had signed the note only as president of the corporation.

If the appellant had entered a plea to such effect instead of merely a plea of general denial, then the point that he raises now might be important. But when he made only a general denial, he could not thereafter claim that he signed the note in a representative capacity. So, even conceding without deciding that the language, "except as otherwise established between the immediate parties," has the effect that the appellant says, nevertheless the appellant's failure to plead anything but a general denial foreclosed any claimed right that he might have to show the status under which he signed the note.

## II.

The appellant's second point is that he should have been allowed to amend his answer so as to plead more than a general denial. When E. B. Chiles, Jr. attempted to testify that Chiles Planting Company was a corporation and that he signed the note as president of the corporation, the Court held such evidence to be improper, saying:

"THE COURT: .... I think the matter before the Court is whether or not he executed the note. I do not think the corporation has anything to do with it. It was not so pleaded in the answer. .... The pleading said he did not execute the note.

"MR. NORTON: Not for himself.

"THE COURT: You did not plead he was acting as a corporation; you made a general denial. The Court will have to hold you to that.

"MR. NORTON: May we amend now?

"THE COURT: I believe it is too late."

The appellant insists that the Trial Court abused its discretion in refusing to permit an amendment to the answer so that the proffered testimony as to corporate existence and signature intention could be presented to the jury. The appellant relies on Ark. Stat. Ann. § 27-1160 (Repl. 1962), which reads in part:

> "The Court may, at any time, in furtherance of justice, and on such terms as may be proper, amend any pleading. . ."

The complaint in the case at bar had been filed on December 30, 1964; the answer had been filed on January 30, 1965; and the cause was tried on May 27, 1965. The cause was tried to a jury. The plaintiff had offered its evidence and rested; and while the defendant was on the witness stand he moved to be allowed to amend the pleadings. The Court refused. Did the Court abuse its discretion? We have repeatedly held that the Trial Court has wide discretion in such a situation. We revert to *Bluff City Lbr. Co. v. Hilson,* 85 Ark. 39, 107 S. W. 161, previously mentioned under Point I *supra.* In that case, after the Court had refused to allow the proffered evidence because it was outside the issues tendered by the answer, the defendant prayed that it be allowed to amend its answer; the Trial Court refused to allow an amendment at such a late date; and, in affirming the ruling of the Trial Court, we said:

> "The statute provides that a trial court 'may, at any time, in furtherance of justice, and on such terms as may be proper, amend any pleading or proceeding * * * by inserting other allegation material to the case; or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved.' Kirby's Digest, § 6145. The statute does not, however, require the court at all stages of the proceeding to permit the introduction of new issues in the case. That is, to some extent, a matter of discretion with the trial court when the amendment,

'does not change substantially the claim or defense,' and this court will not disturb a ruling of the trial court in the exercise of that discretion, when it clearly appears to have been observed. *Beal & Doyle Company* v. *Barton,* 80 Ark. 326; *Mooney* v. *Taylor,* 68 Ark. 314. No abuse of that discretion is shown here. The amendment was offered at the conclusion of the trial, and the suit had been pending for more than eight months, and up to time it was offered the answer tendered a different issue, and the amendment may have caused a postponement of the trial.''

In *Union Motor Co.* v. *Tait,* 224 Ark. 807, 276 S. W. 2d 690, Chief Justice Griffin Smith used this language:

''*First—Court's Refusal to Permit Answer to be Amended.*—Instances are relatively few where an appellate court has predicated reversible error upon a refusal by the trial court to permit pleadings to be amended after trial has begun over objections of the adverse party. The discretion to overrule such motions must of necessity rest with the tribunal of first address, and this determination is not interfered with unless an abuse of authority is clearly shown in circumstances where the ends of justice would be defeated. *Bridgman* v. *Drilling,* 218 Ark. 772, 238 S. W. 2d 645.''

So, in the case at bar, we cannot say that the Trial Court abused its discretion in refusing to allow an amendment which would have presented an entirely new defense while the case was in progress and after the plaintiff had rested.

Affirmed.