PARKER v. JONES.

4-9936                                                253 S. W. 2d 342

Opinion delivered December 15, 1952.

*F. D. Majors,* for appellant.

*Hays, Williams & Gardner* and *J. M. Smallwood,* for appellee.

MINOR W. MILLWEE, Justice. This action was originally brought by the appellant, Parker Parker, against Noel and Mary Sue Jones, doing business as Nebo Lumber Co., C. J. Robinson, and J. R. Turner for the conversion of timber on 40 acres of wild and unoccupied lands. According to appellant's contention the defendants conspired to deprive him of his timber by having Turner execute an invalid timber deed to Robinson who cut the timber and sold it to Noel Jones who financed the transaction.

On a former appeal we held that appellant's complaint alleged two separate trespasses or torts, one as to an alleged cutting on the east 20 acres of the tract in 1947 and another cutting from the west 20 acres in 1948. We also held that appellees' plea of *res judicata,* growing out of a consent judgment in a former suit, was erroneously sustained as to the 1947 cutting in the absence of a hearing on the merits. *Parker* v. *Turner,* 219 Ark. 194, 242 S. W. 2d 148. Trial to a jury on remand resulted in a verdict and judgment in favor of the defendants who are the appellees here.

Although there are numerous contentions for reversal, the most serious question presented is whether there is substantial evidence to support a jury finding that appellant's cousin, J. R. Turner, had authority to sell the timber in question as the agent of appellant. Turner executed a timber deed to C. J. Robinson on October 25, 1947, purporting to convey the pine timber on the 40-acre tract with six months allowed for its removal. Appellant was then in the Army and was not discharged until December, 1947.

Appellees offered testimony tending to show that Turner was acting as appellant's agent in selling the timber to Robinson. W. B. Halbrook testified that he purchased timber belonging to the appellant from J. R. Turner on two separate occasions in September and November, 1947. His checks delivered to Turner but payable to the appellant for the timber were introduced in evidence. Appellant endorsed one of the checks and his mother endorsed appellant's name to the other with his consent and approval. One witness who was a prospective buyer of the timber in question testified that appellant's mother directed witness to see Turner. There was evidence of other circumstances indicating that appellant held his cousin out as an agent with authority to sell the timber.

Appellant strenuously denied that Turner had ever sold anything for him or that he had authority to act as his agent. He also stated that he had quite a "curse fight" with his cousin and that Turner had never paid him any part of the $2,250 which Robinson paid for the timber although appellant had demanded such payment of Turner and the other defendants. Appellant testified: "J. R. Turner has never paid me one cent on that, and that is why this law suit is here."

Under this conflict in the evidence the trial court held that a jury question was presented as to whether Turner was acting as appellant's agent in the sale of the timber and instructions were given properly submitting this issue to the jury. In this connection the jury were told that even if they found that Turner was authorized to sell the timber, the deed executed by him in his own name would be ineffectual to bind the appellant unless the latter by his action and conduct was estopped to plead Turner's lack of authority.

We have said that agency may be established by circumstantial evidence as well as by positive testimony. *Bell* v. *State*, 93 Ark. 600, 125 S. W. 1020. While the authority to convey land or growing timber must be conferred by an instrument of equal dignity with the instrument of conveyance, the authority to sell and to make a binding contract of sale may be conferred verbally and

is not within the statute of frauds. *Davis* v. *Spann,* 92 Ark. 213, 122 S. W. 495; *Moore* v. *Exelby,* 170 Ark. 908, 281 S. W. 671.

In *Austin Western Rd. Mach. Co.* v. *Grant County,* 164 Ark. 228, 261 S. W. 283, the court said: "Where a general authority to do an act is alleged, and the plaintiff or defendant relies on the other's having held out a third person as his agent, other instances of his having treated the person as his agent for such an act are receivable to show a general holding out of that person as agent. Wigmore on Evidence, vol. 1, 2d Ed., § 377." This rule has been applied where the question at issue was that of an agent's authority to make a sale of land. *Vaught* v. *Paddock,* 98 Ark. 10, 135 S. W. 331. While the kinship of appellant and Turner standing alone would not justify an inference of agency, such relationship is entitled to some weight, when considered with other circumstances, as tending to establish the fact of agency. *Braley* v. *Arkhola Sand & Gravel Co.,* 203 Ark. 894, 159 S. W. 2d 449. We conclude that there was substantial evidence to support a finding that Turner was acting as appellant's agent in the sale of the timber to Robinson.

Appellant also argues that appellees cannot rely on agency and estoppel because same were not properly pleaded as defenses. In his answer, C. J. Robinson specifically denied the allegation in appellant's complaint that Turner had no authority to sell the timber, and the other defendants denied generally the allegations of the complaint. Moreover, much testimony was presented on the issues of agency and estoppel without objection. Where a case is tried upon an issue not tendered by an answer and evidence is introduced concerning it without objection, the answer will be treated as having been amended to conform to the proof and the sufficiency of the answer may not be challenged on appeal. *Athletic Tea Co.* v. *McCormack,* 159 Ark. 405, 252 S. W. 7. In *Fairbanks-Morse & Co.* v. *Hogan,* 201 Ark. 1114, 148 S. W. 2d 162, we said: "When appellee introduced evidence which tended to create an estoppel there was no objection, and it cannot be complained of now." There was no objection at the trial that agency and estoppel

had not been properly pleaded and such objection comes too late after testimony is admitted on these issues without objection.

Another sharply disputed question presented to the jury was whether appellant released the appellees from liability for the 1947 cutting when Robinson and Nobe Buckman paid appellant $1,500 in settlement of the consent judgment rendered in the first suit filed in 1949. Robinson, who was a party to that suit, was positive in his testimony that he paid $750 of the $1,500 payment to appellant in full settlement for all the timber cut and removed from the 40-acre tract. Appellant stoutly denied this testimony and the issue was submitted to the jury under proper instructions. Appellant earnestly suggests that we should disbelieve the testimony of Robinson and others. The jury, and not this court, are the exclusive judges of the credibility of the witnesses. That body could have found from the evidence that the settlement of the first law suit was in full satisfaction of all damages resulting from the timber cutting on the 40-acre tract.

Appellant also objected to the trial court's action in excluding certain testimony. The court refused to permit one witness to state that he had at one time "guessed" that a certain amount of timber was removed from the 40 acres after the witness had frankly stated that he did not know the amount of timber removed. In sustaining the objection to this testimony the court offered to permit counsel to qualify the witness to make an estimate of the timber removed. The court also refused to permit certain hearsay testimony, but the record fails to disclose any exception to the court's ruling by the appellant. We find no error in these rulings. The trial court was very liberal in permitting appellant to testify what his examination of the public records showed as to tax payments and other matters relative to his claim of title over the objection of appellees that the tax receipts and records would be the best evidence.

The trial court on his own motion gave 11 instructions which fully covered the issues in the case. Appel-

lant made only a general objection to these instructions. None of these instructions are inherently erroneous nor are they subject to the specific objections that appellant now seeks to urge against them.

Appellant also requested 14 instructions which were refused by the trial court. Most of these instructions included the name of Mary Sue Jones as a defendant when the court had instructed the jury that all parties were in agreement that Mrs. Jones was not subject to any possible liability in the case. Some of the instructions requested were peremptory and the matters contained in others were fully covered by the instructions given.

We find no prejudicial error in the record and the judgment is affirmed.

McFADDIN, J., not participating.